CARMINE RUGGIERO, RESPONDENT, v. CENTRAL RAIL-
ROAD COMPANY, APPELLANT.

Submitted October 13, 1933—Decided January 17, 1934.

Before Justices PARKER, LLOYD and PERSKIE.

For the appellant, *William A. Barkalow.*

For the respondent, *Irving Charles Picker.*

The opinion of the court was delivered by

PARKER, J.  This is defendant's appeal from a judgment
in favor of the plaintiff in the District Court entered upon
the verdict of the jury.  The case arises out of an accident
at a railroad crossing.  The grounds of appeal are three in
number: "(1) denial of motion for nonsuit; (2) direction
of verdict against the defendant on its counter-claim; (3)
the court erred in not rendering a verdict for the defendant
against the plaintiff of no cause of action."

Ground No. 3 is not very intelligible and, we think, futile. The verdict was rendered by the jury, not by the court; and it is elementary that error does not lie on the verdict of a jury as a general proposition.

The other two grounds we proceed to consider.

The circumstances of the accident were unusual. It occurred at a country grade crossing in Monmouth county, the railroad train operated by the defendant company, running into plaintiff's automobile which had stalled while crossing the track or tracks. The case shows that the accident occurred in broad daylight, that there was a clear view in both directions for a long distance, and the evidence tends to show that after the plaintiff's car stalled, there was an interval of some ten minutes or so before any train arrived, and that in that interval the plaintiff and others, who came to his assistance, made futile efforts to start the stalled engine and also to push the car off the track, but without success; and that one or more of those who were helping attempted to signal the approaching train but failed to draw the attention of the engineer in time for him to stop the train before striking the automobile.

The amended state of demand alleged that the automobile became stalled on the crossing and that the defendant's train ran into it because of negligence in failing to heed the warning of the plaintiff and others, in failing to observe the car stalled on the tracks, in failing to stop before striking the car, and in failing to keep a proper lookout, &c. The counterclaim, which the judge directed the jury to ignore, was that plaintiff negligently operated the car so that it struck the railroad train and did damage thereto and to other appliances of the defendant.

In some of its aspects the case will be seen to be quite similar to the case of *Taylor* v. *Lehigh Valley Railroad Co.,* 87 *N. J. L.* 673, but it differs first in that there was no claim of a defective crossing as in the Taylor case; and secondly, in the circumstances under which the plaintiff's car became stalled. What happened, according to the testimony which seems to be without substantial contradiction, was that as

the plaintiff's car was in the act of crossing the railroad tracks on the planking, another car came from the opposite direction and undertook to cross, pushing the plaintiff's car so closely that plaintiff was obliged to make a slight swerve to his right to avoid it, and in so doing the right hind wheel of the plaintiff's car skidded enough to slip off the plank of the crossing and down between the two rails of the track; and while it was in that position the engine stalled and the car remained with the right hind wheel down between the two rails so that it could not be pushed out and the car removed from the crossing. Whatever may be said of the likelihood of such an occurrence, it was amply supported by the testimony and naturally was clearly a case for the jury.

Taking up first the refusal to nonsuit, the motion made before the court was in the following language:

"Mr. Hanlon: I move for a nonsuit on the ground that there is no evidence of negligence. There is no testimony or proof of any duty on the part of the railroad company or engineer to keep a lookout. There is the case of Taylor *v.* Lehigh Valley Railroad Company, and that case was a case of a defective crossing, in which the court held that it is incumbent upon the railroad company to keep a crossing in good repair, and this crossing not being in good repair, then under the circumstances, it became the duty of the engineer to keep a lookout. We do not have that situation here. There is no proof that the engineer saw this man and refused to stop. I respectfully move for a nonsuit."

Now, the argument made on the point that the court erred in refusing to nonsuit is in part as follows:

"If the car was in fact stalled on the crossing, we submit that not even that would be enough, if it became stalled through no fault of the defendant, but in the instant case the car was not stalled on the crossing but had been driven off the crossing by the plaintiff's agent." And again—

"Because it left the crossing which was in good condition and easily traversible and went on to the railroad tracks at a point where the ground was not level with the tracks as at the crossing but about a foot deeper, the car stalled. This

was through no fault of the railroad company but was caused either by the negligence of the driver in driving off the crossing or the negligence of some third person who caused the car to be driven off the crossing."

The argument in the brief proceeds on the apparent theory that because the plaintiff allowed the right hind wheel of his car to get off the planking of the crossing, the plaintiff was a trespasser and therefore was within the rule relied on in *Pennington* v. *Director-General of Railroads,* 97 *N. J. L.* 40. Following out that argument, the point made is that plaintiff being thus a trespasser, the defendant owed him no duty except to abstain from willful injury, and that of such injury there was no proof whatever. It might be sufficient to say in disposing of this point that the motion to nonsuit was not predicated on any theory of trespass at the time it was made but, as we read the language of counsel, upon the ground that because there was no defect in the crossing the engineer was under no duty to keep a lookout in order to avoid vehicles thereon. However, it may be well to observe in regard to this claim of trespass that we find nothing in the proof to indicate that the plaintiff was a trespasser on the property of the railroad company. There is nothing in the case to show how wide the public highway was at that point or what was the width of the plank crossing or how much space, if any, was open between the end of the plank crossing and the edge of the highway. It is common knowledge we think that the average country grade crossing is not provided with planking between and on both sides of the rails to the full width of the highway as laid; nor is there anything in the evidence to show how far off the plank portion of the crossing the hind wheel had gone. Presumably it was a very few inches.

Now, the law, we think, is fully settled that where a railroad crosses a highway, the railroad company does not take the land of the highway as real estate of individuals is taken, and acquires the right to use only the crossing in common with the public traveling on the highway. *Newark* v. *Erie Railroad Co.,* 75 *N. J. Eq.* 20, reversed on other grounds in

76 *Id.* 317; 51 *C. J.* 649. It is true that under certain conditions a railroad may occupy a portion of a crossing excluding the public generally where it is necessary to build a bridge or an archway above grade. *State* v. *Lackawanna Railroad Co.,* 84 *N. J. L.* 289. In that case it was held that the railroad was not guilty of maintaining a nuisance as a court question, in occupying a portion of a public road for the piers of a bridge, provided it constructs and maintains a passage along the highway of a width and character suitable to the locality. But there was no such situation in the present case. If the planking did not extend the full width of the highway, there was then a vacant space on each side of that planking over which the railroad had a right of passage with its reasonable incidents, and nothing more. *Newark* v. *Erie Railroad Co., supra.*

Section 26 of the Railroad act (*Comp. Stat., p.* 4231), requires every railroad company to construct and keep in repair good and sufficient bridges and passages over, under and across the railroad or right of way where any public or other road, street or avenue now or hereafter laid shall cross the same, so that public travel on the said road shall not be impeded thereby, and such bridges and passages shall be of such width and character as shall be suitable to the locality in which the same are situated. In applying this statute it has been, as already stated, the common practice to restrict the width of the planking at the crossing to something less than the full width of the legal road, but that fact creates no exclusive right in the railroad to the land still lying between the lines of the road but not planked over. On the contrary, the right of crossing within road lines remained in the public, subject to the ordinary and normal risks of using an unfinished surface crossed by the rails. The case of *Opdycke* v. *Public Service Railroad Co.,* 78 *N. J. L.* 576, while bearing on the rights and duties of a street railway company using a highway longitudinally, is nevertheless illustrative, in that it held the rights of the public are not limited to the traveled way. and that the company having constructed for its own convenience within the lines of the highway a bridge not fit for use by the general public, was liable to the owner of a

runaway horse which attempted to cross that bridge. In effect, the trespass, if trespass there was, was not that of the horse but of the street railroad. We conclude, therefore, that there was nothing to show that the plaintiff was a trespasser on property of the railroad company, and hence if the motion had been made on that ground it would have been properly denied.

So far as relates to the claim that the engineer was under no duty to look out for an automobile stalled in crossing the tracks, we think it is clearly untenable. In *Rafferty* v. *Erie Railroad Co.,* 66 *N. J. L.* 444 (at *pp.* 449, 450), the court held that the trial judge properly charged it to be the duty of the engineer and fireman, if they see that there is possible danger of collision, to exercise reasonable diligence and reasonable care to avoid it. "That such a duty devolves, under the law, upon the company's servants there can be no question. The law is that while at highway crossings the railway company has the prior right of passage as against the traveler, still both parties must exercise care and diligence in regard to their respective duties, and are charged with the mutual duty of exercising reasonable care to prevent injury."

In *Voehl* v. *Delaware, Lackawanna and Western Railroad Co.,* 59 *Atl. Rep.* 1034, not officially reported, one of the plaintiff's horses fell while crossing the track, and the plaintiff could not get him on his feet in time to avoid an approaching train. The trial court excluded a question to the engineer as to what he had done to avoid the accident. This was held error, the court saying: "Both parties were within their legal rights, and the defendant can only be held liable for negligence on its part. * * * On the question of the engineer's negligence, it was essential to ascertain what he did to avoid the accident after he saw the red light." It seems to have been taken for granted that a duty of care rested on the engineer even although the horse had fallen on the crossing.

So, also, in the Taylor case (87 *N. J. L.* 675), where it was said by the Court of Errors and Appeals, "so, it was the duty of the engineer to make reasonable and proper efforts, in view of the circumstances, to foresee and avoid collision,

including the duty, if he saw that there was possible danger of collision, to exercise reasonable care and diligence to avoid it, by stopping his engine. Every reasonable precaution should be used by both the driver of the engine and the driver of the automobile to guard against coming in contact." This language is general, as will be seen, and is not in terms restrictive to a situation where the stalling of the automobile was originally due to the failure of the railroad company to maintain a proper crossing. We conclude, therefore, on this branch of the case that the motion to nonsuit was not put upon any ground that the plaintiff was a trespasser; that if it had been put on that ground, it should not have prevailed because there is no proof to show that the plaintiff was a trespasser, even assuming that if he had been such trespasser no duty of care was owing. If an automobile breaks down on a crossing, there is at least a duty of care on the part of the railroad company to avoid running it down, and to that end, particularly if the crossing be not guarded in any way, there rests upon the operator of the engine a duty to keep a proper lookout to discover trouble ahead and to do what he can to avoid it. In the present case there was an abundance of testimony to indicate that the engineer had not, as the jury might find, fulfilled his duties in that behalf. Consequently, unless the judgment must be reversed for error in removing the counter-claim from the consideration of the jury, it should be affirmed. We proceed, therefore, to a consideration of this matter of the counter-claim.

In instructing the jury to disregard the counter-claim, the trial court necessarily held that there could be no question on the evidence with regard to any negligence of the plaintiff in allowing the hind wheel of his car to get off the plank crossing. In fact, the court said so in so many words and charged the jury that the only question they had to consider was that of negligence on the part of the railroad company. We think this was clearly erroneous, and if counsel for the defendant had pushed his exception in that regard by specifying it as error on this appeal, we should feel obliged to reverse on that ground. The only specification for this branch

of the case is the overruling of the counter-claim.  This, however, is adequate for a reversal, and the judgment will be reversed accordingly on that ground, but in view of the somewhat unusual circumstances, we have deemed it advisable to express our views also on the other branch of the case.

The judgment will be reversed, and the cause remanded for a new trial.